FILED
2020 Oct-06  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DEMONTRAY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:19-cv-00945-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Demontray Williams ("Williams"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Williams timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

On May 11, 2011, the Commissioner determined that Williams was disabled and entitled to begin receiving SSI as a child. (Tr. at 43.) When Williams attained age 18, the Commissioner had to redetermine his disability status as an adult. (Tr. at 56-57.) The Commissioner found he was no longer disabled as of April 1, 2016. (Tr.

at 56-57). On reconsideration, a disability hearing officer also found that Plaintiff was no longer disabled as of April 1, 2016. (Tr. at 83-94). Plaintiff appealed, and after a hearing, an administrative law judge ("ALJ") issued a decision on May 14, 2018, finding Plaintiff was no longer disabled as of April 2, 2016, and he had not become disabled since that date. (Tr. at 18-31, 59-75). The Appeals Council denied Plaintiff's request for review on May 9, 2019. (Tr. at 1-7).

Williams was 20 years old at the time of the ALJ's decision. (Tr. at 64, 100.) He has a high school education. (Tr. at 22-23, 64, 69, 291.) He has no past relevant work. (Tr. at 21, 23, 67, 69, 89, 92, 208, 216-17, 224, 250, 257, 272, 290, and 291.) Williams claims he is disabled due to asthma and learning disabilities. (Tr. at 64-65, 298, 302, 311, 316, 365-66, 380, 388, 404, 411, 420, 430, 439, 471.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in

substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of
the plaintiff's physical and mental medically determinable impairments ("MDI").
*See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or
combination of impairments that is not classified as "severe" and does not satisfy
the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will
result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii). The decision depends on the medical evidence contained in the
record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that
"substantial medical evidence in the record" adequately supported the finding that
the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the
plaintiff's impairment or combination of impairments meets or is medically equal to
the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
*See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed
impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and
416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§
404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination

of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Williams "was no longer disabled as of April 1, 2016, based on a redetermination of disability under the rules for adults who file new applications." (Tr. at 64.) With regard to step one of the sequential evaluation process—whether Williams was engaged in substantial

gainful activity—the ALJ correctly explained that "this step is not used for redetermining disability at age 18" and therefore proceeded to step two. (Tr. at 63.) *See* 20 C.F.R. § 416.987(b). Then, the ALJ determined that, since April 1, 2016, Williams's "asthma; cervicalgia; borderline intellectual functioning; generalized anxiety disorder; and depressive disorder" are considered "severe" based on the requirements set forth in the regulations. (Tr. at 64-65.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 65-66.) The ALJ determined that Williams has the following RFC:

> [T]o perform light work as defined in 20 C.F.R. § 416.967(b) except: no exposure to heavy concentrations of dusts and industrial pollutants; work must be simple and routine in nature, and deal with things rather than data or people.

(Tr. at 66-67.)

According to the ALJ, Williams "has no past relevant work." (Tr. at 69.) The ALJ also determined that Williams is a "younger individual age 18-49" as that term is defined by the regulations. (*Id.*) In addition, the ALJ determined that "the transferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline. (Tr. at 69-70.) The VE found that there are a significant number of jobs in

the national economy that Williams is capable of performing, such as a marker, garment sorter, or garment folder. (*Id.*) The ALJ concluded his findings by stating that Williams's "disability ended on April 1, 2016, and the [plaintiff] has not become disabled again since that date." (Tr. at 70.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181

(11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383

U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by

substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d

1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for

review of claims], it is imperative that th[is] Court scrutinize the record in its entirety

to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d

622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir.

1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Williams alleges that the ALJ's decision should be reversed and remanded for

several reasons: (A) he did not effectively waive his right to counsel at the

administrative level; (B) the ALJ erred in not applying the medical improvement

review standard in determining his RFC; (C) he is entitled to benefits pursuant to

the presumption of disability pursuant to Listing 12.05 (Intellectual Disorders) or an

equivalent; (D) the Appeals Council erred in denying review of post hearing evidence and in failing to show that it adequately evaluated new evidence in its written denial;[1] and (E) remand is required pursuant to Sentences Four and Six of 42 U.S.C. § 405(g).

## A.    Waiver of Right to Counsel

Williams argues that he did not effectively waive his right to counsel at the administrative level, presumably due to his low IQ and depression. The Eleventh Circuit has held that "Social Security claimant[s] ha[ve] a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (quoting *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)). A claimant must be notified in writing of his right to counsel at the administrative level as well as the possibility of obtaining representation by organizations that provide legal services free of charge. *See* 42 U.S.C. § 406(c). A claimant may waive his right to counsel. *Schweiker*, 677 F.2d at 828. However, to be effective "such a waiver must establish, at some point, that the claimant is 'properly

---

[1] Plaintiff presents his issues regarding the Appeals Council as two separate issue: (1) "Appeals Council failed to show in its written denial that it adequately evaluated the new evidence;" and (2) "Appeals Council refused to review post hearing evidence finding "additional evidence does not relate to the period at issue." (Doc. 20 at 1.) For the sake of clarity and brevity, these issues have been consolidated.

apprised of his options concerning representation."' *Schweiker*, 677 F.2d at 828 (quoting *Peppers v. Schweiker*, 654 F.2d 369, 371 (5th Cir. 1981)).

Here, Williams does not mention the multiple instances during the administrative process that he was properly informed of his right to counsel. (Tr. at 21, 60, 79, 98, 112, 114, 117-20, 128, 133-34, 151.) For instance, prior to the hearing before the ALJ on August 9, 2017, Williams received at least four written notices from the Commissioner detailing his right to counsel. (Tr. at 79, 98, 114-20, 128-34.) Three notices—dated April 20, 2016; February 9, 2017; and May 30, 2017—contain the same two-paragraph section stating that Williams has a right to counsel. (Tr. at 79, 98, 128.) Two notices—sent on March 10, 2017, and May 30, 2017—contain the same two pages of information notifying Williams of his right to counsel and the availability of free or low-cost counsel. (Tr. at 117-18, 133-34.) Particularly, one notice—sent on March 10, 2017—contains a list of organizations offering counsel and their contact information that Williams could utilize. (Tr. at 119-20.) Williams acknowledged that he understood that he had a right to counsel on two forms dated March 6, 2017, and August 9, 2017. (Tr. at 112, 151.)

At the hearing before the ALJ Williams signed a Waiver of Right to Representation, which explicitly stated that Williams had a right to counsel and that, if Williams hired counsel, "the representative may be paid directly from your past

due benefits, either 25% of your past due benefits or $6,000, whichever is less." (Tr. at 151.) On the waiver, Williams specifically indicated that he was "able to read and understand" the form; he did not have any questions about the waiver; he understood his right to be represented; he understood "the benefits and disadvantages of a representative[;]" he understood "how a representative would be paid[;]" and that he wished "to proceed with the hearing today without representation." (Tr. at 151.) During the hearing, the ALJ confirmed that Williams had acknowledged that he had a right to counsel when the ALJ noted that Williams had previously employed counsel and asked if Williams had "given any thought to talking to an attorney . . . or getting legal representation to be of assistance." (Tr. at 21.) Williams acknowledged the ALJ's comments and did not pose any questions concerning his right to counsel at the hearing. (Tr. at 21.)

In his reply brief, Williams does not dispute that he received these multiple notices, nor does he assert that he was actually confused about his rights. Indeed, his ability to obtain counsel less than two months after the ALJ's adverse decision indicates he was aware of his right to representation and simply elected not to exercise it until after he received a final decision (Tr. 152). Therefore, there is sufficient evidence demonstrating that Williams was aware and properly informed of his right to counsel, which he waived. Moreover, Williams failed to show that he was

prejudiced due to lack of representation at the hearing level. *See Graham*, 129 F.3d at 1422.

### B.    Medical Improvements Review Standard

Williams claims that the ALJ should have applied the medical improvement review standard based on the premise that this is a benefits termination case. However, the Social Security Act states, and the ALJ correctly noted, that individuals eligible for SSI under the age of 18 must have their disability redetermined when they reach age 18 under the rules for disability utilized for adults. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987(a), (b). The ALJ correctly noted that the Social Security Act provides that the medical improvement review standard does not apply to disability redeterminations at age 18. (Tr. at 63.) *See* 42 U.S.C. § 1382c(a)(3)(H); 20 C.F.R. § 416.987(b). The ALJ therefore correctly used the Commissioner's five-step sequential evaluation process for determining disability in adults to evaluate Plaintiff's disability claim. (Tr. at 63-64). *See* 20 C.F.R. § 416.920. Therefore, the medical improvement review standard is not applicable in this case and there was no error.

### C.    Listing 12.05

Williams next asserts that he met Listing 12.05 pertaining to intellectual disorders and therefore is entitled to benefits. *See* 20 C.F.R. pt. 404, subpt. P, app.

1, § 12.05. However, the ALJ correctly found that he failed to show he had the requisite deficits in adaptive functioning to meet or equal the Listing.

A plaintiff is conclusively presumed to be disabled at step three of the sequential evaluation if he meets or equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The Listings describe "impairments that [the agency] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet a Listing, a plaintiff must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets *some* of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A plaintiff bears the burden of demonstrating that he meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Here, Williams failed to meet his burden, as he failed to show he met all the criteria of Listing 12.05.

Listing 12.05 provides:

*Intellectual Disorder* (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual function evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual function evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance UQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

      d.  Adapt or manage oneself (see 12.00E4); and

    3.  The evidence about your current intellectual and adaptive functioning about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listing clarifies Listing 12.05, stating:

> Listing 12.05 has two paragraphs, designated A and B, that apply to only intellectual disorder. Each paragraph requires that you have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A(3).

Williams has correctly noted that a valid IQ score of less than 70 creates a rebuttable presumption that he satisfies the diagnostic criteria for intellectual disability. *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001)). At the same time, however, it is well established that such a presumption does not arise where the qualifying IQ score is inconsistent with other record evidence concerning a claimant's activities and behavior. *Id.* at 1269; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (recognizing a valid I.Q. score was not conclusive evidence of intellectual disability when "the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior"); *Popp v. Heckler*, 779 F.2d

1497, 1500 (11th Cir. 1986) ("[T]he ALJ was not required to find that [the claimant] had an intellectual disability based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior.").

Here, the ALJ acknowledged Williams's IQ score of 53 on March 25, 2016. (Tr. at 22, 65.) The ALJ determined, however, that Williams failed to show significant deficits in adaptive functioning, as required by the Listing. (Tr. 65-66); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Adaptive functioning "refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands" as well as "your typical functioning at home and in the community, alone or among others." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00H(3)(A). Even though Listing 12.05 is not explicitly included in the ALJ's step-three analysis, the ALJ did conclude that Williams has only moderate limitations in "understanding, remembering, or applying information" and "interacting with others" as well as mild limitations in his "ability to concentrate, persist, or maintain pace" and "his ability to adapt or manage himself." (Tr. at 65-66.) Substantial evidence supports this finding. For instance, Williams has shown that he is able to provide information on his health and read and respond to questions. (Tr. at 64, 364, 444, 445, 446, 448, 450, 456, 457.) Williams has indicated that he shops and takes his medications. (Tr.

at 29, 64, 196, 369.) Although he does not like to drive, he has shown that he is able to drive by proof of his driver's license. (Tr. at 24, 65); *See Bouler v. Comm'r*, 624 F. App'x 728, 729 (11th Cir. 2015) (holding that evidence of plaintiff being able to shop, drive, and take care of their own personal needs supported the conclusion that the plaintiff did not exhibit significant deficits in adaptive functioning). Williams is able to live with his mother and two brothers, and he likes to spend his time with his family by being with his mother at the house and occasionally going to the mall and park with his brother. (Tr. at 21, 23, 24, 66, 193, 369, 376, 384, 392, 400-01, 408-09, 416-17, 426-27, 435-36, 462, 473.) Williams also spends time with his friends, such as a woman "that lives up the street" that accompanies him on walks and sits on a porch with him, and he has shown to be cooperative in his relationships with others. (Tr. at 24, 66, 68, 188, 376, 384, 393, 401, 409, 417, 427, 436.) Williams is able to watch television; and, according to his twelfth-grade history teacher at Etowah High School, he did not seem to exhibit any noticeable issues with distractions. (Tr. at 66, 187, 365.) Williams has also shown on multiple occasions that he is "able to handle self-care and personal hygiene." (Tr. at 66, 190, 444, 445, 456, 457, 473, 474, 475.)

Moreover, in a mental examination on March 17, 2016, Dr. Jack L. Bentley, Jr. indicated that Williams can complete his activities of daily living without assistance and that his impairment "would fall in the mild to moderate range." (Tr. at 365-66);

*See Harris v. Comm'r*, 330 F. App'x 813, 815 (11th Cir. 2009) (holding that evidence of the plaintiff being able to perform activities of daily living with only mild limitations supported the conclusion that the plaintiff did not exhibit significant deficits in adaptive functioning).

Ultimately, Williams did not meet his burden of showing he met all the criteria of Listing 12.05, and the ALJ did not err.

### D.   Appeals Council Review

The ALJ issued the decision on May 14, 2018. (Tr. at 70.) Following the ALJ's decision, Williams hired counsel who then submitted seven pieces of additional evidence to the Appeal Council: (1) medical records dated June 6, 2018, through July 24, 2018, from Quality of Life Health Services; (2) medical records dated July 17, 2018, through April 16, 2019, from CED Mental Health Center; (3) medical records dated October 2, 2017, through November 17, 2017, from Quality of Life Health Services; (4) a Mental Health Source Statement, dated July 27, 2018, by Dr. Frederic W. Feist, a psychiatrist at CED Mental Health Center, detailing his evaluation of Plaintiff's mental state; (5) a Mental Health Source Statement, dated July 19, 2018, by Ashley Johnson, M.S., a therapist at CED Mental Health Center, detailing her evaluation of Plaintiff's mental state; (6) medical records dated June 9, 2016, through April 25, 2018, from CED Mental Health Center; and (7) medical records dated June

13, 2018, through June 21, 2018, from Etowah Pulmonology Associates. (Tr. at 476-99, 500-11, 512-24, 525, 526, 527-45, 546-53.)

In general, a claimant may submit additional evidence at each level of administrative review, including a request for review by the Appeals Council. *See* 20 C.F.R. § 416.1400(b). When evidence is submitted for the first time to the Appeals Council, that additional evidence becomes part of the administrative record. *See id.*; *Keeton v. Dep't of Health and Human Servs.,* 21 F.3d 1064, 1067 (11th Cir. 1994). If the evidence is new, material, and chronologically relevant, the Appeals Council must consider it. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1323 (11th Cir. 2015). Where a claimant presents such evidence, the Appeals Council will review the ALJ's decision only if there is a reasonable probability that the additional evidence would change the outcome of the decision. *See* 20 C.F.R. § 416.1470(a)(5); *Ingram*, 496 F.3d at 1262. On review, the district court considers the entire record, including the additional evidence, to determine "whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1266-67. Evidence is material if a reasonable possibility exists that the evidence would change the administrative result. *See Washington*, 806 F.3d at 1321. New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b); *Ingram*, 496 F.3d at 1261; *see also Wilson v. Apfel*, 179 F.3d 1276,

1279 (11th Cir. 1999) (noting the issue in a disability case is whether a claimant was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision").

### 1. Evidence that the Appeals Council found would not change the outcome of the ALJ's decision

In this case, the Appeals Council found that the medical records dated October 2, 2017, through November 17, 2017, from Quality of Life Health Services and the medical records, dated June 9, 2016, through April 26, 2018, from CED Mental Health Center "did not show a reasonable probability that [they] would change the outcome of the decision." (Tr. at 2.)

Substantial evidence supports this determination. The medical records from Quality of Life Health Services contain notes from office visits on October 2, 2017, and November 17, 2017. (Tr. at 512, 518.) On October 2, 2017, Plaintiff came in to obtain a refill on his medications and to follow up on issues with asthma, abdominal pain, and eye problems. (Tr. at 512.) Plaintiff was told by Richard West, a Certified Registered Nurse Practitioner ("CRNP"), to continue his medications to help with his asthma. (Tr. at 516.) With regard to his abdominal pain, Williams was assessed by CRNP West to have an inguinal hernia and was referred to a surgeon. (Tr. at 512, 516.) With regard to his eye problems, CRNP West noted that Williams had "a pinkish tinge to the conjunctiva" that was possibly related to "genetics or allergies"

and was referred to an ophthalmologist for evaluation of his eye issues. (Tr. at 516.) On November 17, 2017, Williams came in to discuss alternative measures that he could take with regards to his inguinal hernia due to fears about surgery with CRNP West. (Tr. at 518.) Williams was told by CRNP West to continue to go forward with the surgeon's plan. (Tr. at 523.)

The medical records from CED Mental Health Center contain forms, evaluations, and notes from Plaintiff's visits on twelve dates: June 9, 2016; June 22, 2016; July 27, 2016; November 11, 2016; November 15, 2016; March 8, 2017; May 10, 2017; June 6, 2017; August 16, 2017; October 13, 2017; November 22, 2017; and April 25, 2018. (Tr. at 527-45.) On June 9, 2016, Williams completed a form stating that he was referred to CED Mental Health Center due to issues with depression and difficulty sleeping. (Tr. at 527.) At Williams's intake assessment on June 22, 2016, it was noted by Karen Leyml, a therapist, that Williams had an "appropriate" appearance, "euthymic" mood, and "normal" affect. (Tr. at 528.) Williams also indicated that he was struggling with depression and stated that "he doesn't get out to socialize and worries a lot about his mother." (Tr. at 531.) Leyml's assessment diagnostic impression section states that Williams likely suffered from "unspecified" depressive disorder. (Tr. at 535.)

At Plaintiff's visit on July 27, 2016, it was noted by Hawith Brown, a therapist, that Williams had a "neat" appearance, "dysphoric" mood, and "normal" affect. (Tr. at 536.) At the same visit, Brown noted that Williams was still struggling with depression. (Tr. at 536.) Brown also noted that Williams would stay in his house for most of the week; and he was worried about finances and trying to "find a job to accomplish something for himself." (*Id.*)

At Plaintiff's visit on November 11, 2016, it was noted by Brown that Williams had a "neat" appearance, "dysphoric" mood, and "blunted" affect. (Tr. at 537.) Brown also noted that Williams was handling his issues with depression "a little better" and that he was going out of the house with his brother "3 or 4 times a week." (*Id.*) Brown described Williams as being very quiet and showing some resistance to answering questions, but still maintained a "courteous and polite" demeanor. (*Id.*) At Plaintiff's evaluation on November 15, 2016, it was noted that Williams was dealing with some anxiety and depression as a result of a traumatic experience at a DARE camp in the eighth grade and the deaths of family members in the past years. (Tr. at 538.) Williams was told to continue treatment and "to get out and do more activity with his mother." (*Id.*)

At Plaintiff's visit on March 8, 2017, Brown noted that Williams had an "appropriate" appearance, "dysphoric" mood, and "flat" affect. (Tr. at 539.)

Brown also indicated that Williams still had some issues with depression and socializing, but he was "getting out a little more with his brother" and was getting good sleep with the medication. (*Id.*) Then, at Plaintiff's visit on May 10, 2017, Brown noted again that Williams had a "neat" and "appropriate" appearance, "dysphoric" mood, and "blunted" affect. (Tr. at 540.) Brown also reported that Williams had made some improvements in his issues with depression and socializing, but he still was having some issues sleeping. (*Id.*)

Later, at Plaintiff's evaluation on June 6, 2017, it was noted that Williams had made some improvements with his anxiety and depression, but that he was "very quiet," worried about his mother, looked at his mother whenever asked questions, and looked "very sad" and worried despite his polite appearance. (Tr. at 541.) Williams was told to continue treatment as planned without any changes to his medications. (*Id.*)  Next, at Plaintiff's visit on August 16, 2017, the therapist noted that Williams had a "neat" appearance, "euthymic" mood, and "flat" affect. (Tr. at 542.) In addition, the therapist also found that Williams's issues with depression had improved, but he was still anxious about his mother and the chances of his SSI benefits ceasing. (*Id.*) The therapist recommended that Williams begin journal writing about his anxieties. (*Id.*)

Then, at Plaintiff's visit on October 13, 2017, the therapist reported that Williams had a "neat" appearance, "euthymic" mood, and "normal" affect. (Tr. at 543.) Additionally, the therapist also indicated that Williams's depression and anxiety had worsened to the point that he was breaking out in welts. (*Id.*) At Plaintiff's visit on November 22, 2017, Brown noted that Williams had "appropriate" appearance, "dysphoric" mood, and "flat" affect. (Tr. at 544.) Brown also reported that Williams's issues with depression and anxiety had continued, especially with regards to his upcoming hernia surgery and that despite improvements as a result of medication, he was still struggling to get an adequate amount of sleep. (*Id.*) At Plaintiff's visit on April 25, 2018, Brown reported that Williams had an "appropriate" appearance, "euthymic" mood, and "normal" affect. (Tr. at 545.) Brown also noted that Williams had indicated that he "decided not to have scheduled hernia surgery due to fear" and that his issues with depression, socializing, and sleep had improved. (*Id.*)

In denying review, the Appeals Council is not required to give a detailed explanation as to why each individual piece of new evidence submitted fails to change the ALJ's decision. *Mitchell v. Comm'r*, 771 F.3d 780, 783-84 (11th Cir. 2014.) Based on this scope of the Court's review, the supplemental records do not diminish the substantial evidence supporting the ALJ's decision in this case. *See Ingram*, 496 F.3d

at 1266. The supplemental records discussing Williams's issues with depression and anxiety do not contradict the ALJ's findings, which recognized that Williams suffered from generalized anxiety disorder and depressive disorder. (Tr. at 64-65.) Williams has not explained in any way how the new records would change the administrative result. Therefore, the Appeals Council did not err in not evaluating this evidence.

### 2. Evidence that the Appeals Council found was not chronologically relevant

The Appeals Council also found that the following evidence did not relate to the period at issue in the ALJ's decision on May 14, 2018: the medical records dated June 6, 2018, through July 24, 2018, from Quality of Life Health Services; the medical records dated July 17, 2018, through April 16, 2019, from CED Mental Health Services; the medical records dated June 13, 2018, through June 21, 2018, from Etowah Pulmonology Associates; the Mental Health Source Statement, dated July 27, 2918, by Frederic W. Feist, M.D.; and the Mental Health Source Statement, dated July 17, 2018, by Ashley Johnson, MS. (Tr. at 2.)

The medical records dated June 6, 2018, through July 24, 2018, from Quality of Life Health Services contain notes and test data from Plaintiff's visits on June 6, 2018, and July 24, 2018. (Tr. at 476, 485.) The notes from Plaintiff's visit on June 6, 2018, indicate that Plaintiff came in due to issues with a sore throat, acute sinus

symptoms, and a headache. (Tr. at 476, 482-83.) Plaintiff was prescribed medication for acute sinusitis and scheduled "to have Rapid Strep performed" for acute pharyngitis. (Tr. at 482.) The test data from Plaintiff's visit on June 6, 2018, indicate that Plaintiff presented normal results for most tests except for a low showing of Vitamin D, low mean corpuscular hemoglobin (MCH) levels, a low mean corpuscular hemoglobin concentration (MCHC), a low mean corpuscular volume (MCV), a high red blood cell count, high non HDL cholesterol, and high LDL-cholesterol. (Tr. at 492-94.) The notes from Plaintiff's visit on July 24, 2018, indicate that Plaintiff came in for musculoskeletal pain. (Tr. at 485.) Based on this issue and the prior test results, Plaintiff was assessed to have a vitamin D deficiency, essential hypertension, and atopic neurodermatitis. (Tr. at 498-99.) With regards to the atopic neurodermatitis assessment, Plaintiff was referred to Eric Baum, a dermatologist. (Tr. at 499.)

The medical records dated July 17, 2018, through April 16, 2019, from CED Mental Health Center contain notes and evaluations from Plaintiff's visits on three dates: July 17, 2018; February 15, 2019; and April 16, 2019. (Tr. at 502, 510, 511.) A provider conducted an evaluation of Williams on July 17, 2018, where it was noted that Williams had unspecified depressive disorder as well as stress due to his brother being in "some situations" and his medications running out. (Tr. at 511.) Plaintiff

was told to continue treatment. (*Id*.) It was noted at Plaintiff's visit on February 15, 2019, that Williams was having no recent episodes of anxiety, struggling with depression twice a week, and dealing with an inability to sleep. (Tr. at 509.)  Williams did not appear to display any risks and responded positively to medication. (Tr. at 509-10.) Then, Dr. Fredric Feist, M.D. noted that Plaintiff's issues with depression have improved, but he still struggles with getting out of the house and sleeping on April 16, 2019. (Tr. at 501-02.) Plaintiff was told to continue treatment by Dr. Feist. (Tr. at 501.)

The medical records dated June 13, 2018, through June 21, 2018, from Etowah Pulmonology Associates contain clinical encounter summaries on June 13, 2018, and June 21, 2018. (Tr. at 546, 549.) Dr. M. Asif Kaleem, M.D. reported that Williams's issues of sleep disorder, respiratory system disorder, mental disorder, hypertensive disorder, depressive disorder, asthma, and anxiety were reviewed with Plaintiff, and all issues were declared onset on June 13, 2018. (Tr. at 550.) Plaintiff was prescribed medication by Dr. Kaleem for asthma and allergic rhinitis. (Tr. at 552-53.) At Plaintiff's visit on June 21, 2018, Dr. Kaleem reported that Plaintiff's issues of sleep disorder, respiratory system disorder, mental disorder, hypertensive disorder, depressive disorder, asthma, and anxiety, all of which had an onset date of June 13,

2018, were reviewed. (Tr. at 547.) Plaintiff was prescribed medication for his asthma by Dr. Kaleem. (Tr. at 549.)

The Mental Health Source Statement, dated July 27, 2018, from Dr. Feist at the CED Mental Health Center indicated that Plaintiff could "understand, remember or carry out very short and simple instruction." (Tr. at 525.) Dr. Feist indicated that Plaintiff could not "maintain attention, concentration and or pace for periods of at least two hours," "perform activities within a schedule and be punctual with customary tolerances," "sustain an ordinary routine without special supervision," "adjust to routine and infrequent work changes," and "interact with supervisors and/or co-workers." (Tr. at 525.) Dr. Feist estimated that Plaintiff would be off-task for 70% of an 8-hour workday and would fail to report to work due to psychological symptoms on twenty days out of a thirty-day period. (Tr. at 525.) Finally, Dr. Feist indicated that these limitations have existed since April 1, 2016. (Tr. at 525.)

The Mental Health Source Statement, dated July 19, 2018, from Ashley Johnson, M.S., a therapist at CED Mental Health Center indicated that Plaintiff could not "understand, remember or carry out very short and simple instruction," "maintain attention, concentration and or pace for periods of at least two hours," "perform activities within a schedule and be punctual with customary tolerances,"

"sustain an ordinary routine without special supervision," "adjust to routine and infrequent work changes," "interact with supervisors and/or co-workers," and "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Tr. at 526.) Johnson estimated that Plaintiff would likely be off-task for 90% of an 8-hour workday and would fail to report to work "more than half" of a thirty-day period due to psychological symptoms. (Tr. at 526.) Finally, Johnson indicated that these limitations have existed since April 1, 2016. (Tr. at 526.)

Plaintiff admits that these medical evaluations occurred after the ALJ's decision and does not explain how they are chronologically relevant to the time period considered by the ALJ. Plaintiff relies upon *Washington v. Social Security Administration*, 806 F.3d 1317 (11th Cir. 2015), in which the Eleventh Circuit stated that "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant," but the case is distinguishable. In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. 806 F.3d at 1319-20. The court concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's

mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case"). The Eleventh Circuit has recently declined to extend its holding beyond *Washington* in several cases. *See, e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309-10 (11th Cir. 2018) (distinguishing *Washington* because "nothing in these new medical records indicates the doctors considered Hargress's past medical records or that the information in them relates to the period at issue," and because, even assuming they were chronologically relevant, they were not material because there was no reasonable possibility that they would change the administrative result).

There is no indication that the evidence relates to the period at issue with regard to three pieces of evidence: the records, dated June 6, 2018, through July 24, 2018, from Quality of Life Health Services; the records, dated July 17, 2018, through April 16, 2019, from CED Mental Health Center; and the records, dated June 13, 2018, through June 21, 2018, from Etowah Pulmonology Associates. The Mental Health Source Statements from Dr. Feist, dated July 27, 2018, and Ashley Johnson, M.S., dated July 19, 2018, do reference an opinion that explicitly states that Plaintiff's "limitations existed back to 4/1/16," a period of time before the ALJ made his decision. (Tr. at 70, 525, 526.) Even if the Court were to determine that these

Mental Health Source Statements were chronologically relevant, however, they are not material. The Mental Health Source Statement is a series of yes or no questions with no explanation for the answers given. (Tr. at 525, 526.) They are thus conclusory and have limited probative value. (*Id.*) They do not reference any of Plaintiff's medical records or otherwise explain the bases for the statements therein. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014) (holding that the Appeals Council did not err in denying review of evidence based upon a physician's conclusory opinion that lacked any supporting explanation); *Quarles v. Barnhart*, No. 06-13663, 2006 U.S. LEXIS 29003, at *3 (11th Cir. Nov. 21, 2006) (holding that a physician's opinion and assessments were only entitled to minimal weight because they were not accompanied by any objective medical evidence). Therefore, the Appeals Council appropriately refused to review this evidence.

## E.     Motions for Sentence Four & Six Remands

Williams has filed two separate motions to remand the case, with one motion being pursuant to Sentence Four and the other pursuant to Sentence Six. (Docs. 19 & 22.)

### 1.     Sentence Four Remand

"Sentence Four" of 42 U.S.C. § 405(g) "permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence."

*See Falge v. Apfel,* 150 F.3d 1320, 1323 (11th Cir. 1998). To obtain a remand under that provision, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level. *Id.*; *see also Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir. 1986). Conversely, a claimant may seek a remand based on evidence that was properly before the Commissioner under Sentence Four of 42 U.S.C. § 405(g), if he shows that the decision to deny benefits was not supported by substantial evidence in the record as a whole based on the evidence that the Appeals Council did not adequately consider. *See Ingram,* 496 F.3d at 1266–68. Remand is appropriate under Sentence Four when "the Appeals Council did not adequately consider the additional evidence." *See Ingram,* 496 F.3d at 1268 citing *Bowen,* 748 F.2d at 636.

Plaintiff contends that a Sentence Four remand is warranted because he did not effectively waive his right to counsel at the ALJ's hearing on August 9, 2017. (Doc. 19 at 1.) For reasons already discussed in detail above, Plaintiff was aware and properly informed of his right to counsel, which he waived. Based on a review of the evidence, Plaintiff has failed to establish that a remand under Sentence Four is warranted.

### 2.   Sentence Six Remand

"Sentence Six" of 42 USC § 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (The sixth sentence allows the taking of "new evidence . . . that was not available to the claimant at the time of the administrative proceeding.").

Plaintiff points the fact that he subsequently received a favorable SSI decision with an onset of disability date of June 14, 2019, a little over a year after the ALJ's May 14, 2018 decision in this case. (Docs. 22 at 1; 22-1 at 1.) However, the Eleventh Circuit has expressly held that if the only "new evidence" a claimant provides in

support of his request for remand is a later favorable decision, that is not evidence for purposes of Sentence Six remand. *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) ("A decision is not evidence any more than evidence is a decision."); *see also Arnold v. Comm'r of Soc. Sec.*, 724 F. App'x 772, 821-22 (11th Cir. 2015) (denying a sentence-six remand based on a subsequent notice of award). The Court explained that a notice of award is not by itself "new and material evidence warranting a remand of a prior denial of benefits" and that "the existence of a later favorable decision from the Social Security Administration [does not] undermine the validity of a previous denial of benefits." *See Arnold*, 724 F. App'x at 783 (citing *Hunter*, 808 F.3d at 821-22). Plaintiff attempts to distinguish *Hunter* by claiming that decision is not applicable because this is a termination case and Plaintiff was not represented by counsel, but the facts are materially indistinguishable from those in *Hunter*. As in *Hunter*, the only "new evidence" Plaintiff cites in support of his request for remand is the later favorable decision, which was "not evidence for purposes of § 405(g)." 808 F.3d at 822. Based on a review of the evidence, Plaintiff has failed to establish that a remand under Sentence Six is warranted.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Williams's arguments, the Court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable law. The motions to remand are due to be denied. A separate order will be entered.

**DONE** and **ORDERED** on October 6, 2020.

_____
L. Scott Coogler
United States District Judge

160704